# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith MoBilio, :
              Appellant :
: No. 243 C.D. 2025
              v. :
: Submitted: June 16, 2026
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing :

BEFORE:    HONORABLE LORI A. DUMAS, Judge
              HONORABLE STELLA M. TSAI, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                   **FILED: July 21, 2026**

Judith MoBilio (Appellant) appeals from the order entered by the Lehigh County Court of Common Pleas (Common Pleas), dated February 11, 2025. Through that order, Common Pleas denied Appellant's appeal regarding the suspension of her driver's license by the Commonwealth of Pennsylvania, Department of Transportation (Department), Bureau of Driver Licensing (Bureau). We affirm.

## I. BACKGROUND[1]

On May 14, 2024, Pennsylvania State Police Trooper Armond Pacentine pulled Appellant over after observing her driving erratically along

---

[1] We draw this section's substance from Common Pleas' opinion regarding this matter. *See generally* Common Pleas Op., 4/14/2025.

westbound Route 22 at approximately 1 a.m. Trooper Pacentine then conducted field sobriety tests, which Appellant failed, and then asked Appellant to take a preliminary roadside breathalyzer test, which Appellant declined to do. Trooper Pacentine then arrested Appellant for suspected driving under the influence (DUI) and transported her to the Lehigh County Central Booking Center (Center).

While at the Center, Trooper Pacentine read a DL-26B form[2] to Appellant and verbally requested that Appellant submit to chemical testing in order to determine Appellant's blood-alcohol level. Appellant responded by repeatedly asking Trooper Pacentine questions over the course of the following 10 minutes about why she had been stopped and arrested, as well as regarding the chemical testing requirement, which Trooper Pacentine answered. Trooper Pacentine also specifically informed Appellant that her failure to clearly and affirmatively agree to be tested would be considered a refusal, but Appellant nevertheless continued to question him instead of assenting to his request. Trooper Pacentine then signed the DL-26B form and stated thereon that he had read the form to Appellant and had informed her of the consequences that would result if she did not agree to be tested, as well as that Appellant had nevertheless failed to consent to such testing.

This incident resulted in no criminal penalties against Appellant, whose DUI charge was ultimately dropped, but lead to the Bureau suspending her driver's license for 12 months, effective on July 5, 2024, due to her failure to submit to testing

---

[2] This form is read out loud by the arresting officer and informs the detained individual that (1) they have been arrested for DUI; (2) the arresting officer requests that they voluntarily submit to a chemical blood test; and (3) their driver's license will be suspended for 12 to 18 months if they do not agree to the blood test, with the suspension's length being dependent upon whether they have any prior DUI convictions or test refusals. *See* Common Pleas Ex. 2.

after her arrest.[3]  Appellant then appealed this suspension to Common Pleas, which considered the matter *de novo* and conducted a hearing on February 10, 2025, at which both Appellant and Trooper Pacentine testified.  Common Pleas then denied Appellant's license suspension appeal on the following day, February 11, 2025, which prompted Appellant to appeal that denial to our Court.

## II. DISCUSSION[4]

Appellant raises several overlapping arguments for our consideration, through which Appellant asserts that Common Pleas improperly upheld the license suspension. We combine and summarize these arguments as follows.  First, Appellant asserts that Trooper Pacentine did not have reasonable grounds to believe that she was intoxicated during the traffic stop.  Second, Appellant maintains that she never refused to consent to chemical testing and had the right to question Trooper Pacentine, due to the fact that he had ignored her statements about her physical disabilities[5] and had ordered Appellant to remove articles of her clothing while in his presence at the Center.  Finally, Appellant contends that Common Pleas erred by preventing her from offering evidence at the February 10, 2025 hearing to establish

---

[3] Despite her refusal, Appellant maintains that she did consent to testing *at some point*, that this testing demonstrated her BAC was below the legal limit, and that her criminal charges were dropped accordingly.  *See* Appellant's Br. at 11-14.

[4] "An appellate court's review in a license suspension case is limited to determining whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion." *Habte-DeJesus v. Dep't of Transp., Bureau of Driver Licensing*, 346 A.3d 399, 401 n.3 (Pa. Cmwlth. 2025).  "As long as sufficient evidence exists that is adequate to support the facts found by the trial court as fact-finder, [an appellate court is] precluded from overturning those findings.  Additionally, [an appellate court] must view the evidence in a light most favorable to the party that prevailed before the trial court." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008) (cleaned up).

[5] According to Appellant, she suffers from Ehlers-Danlos Syndrome, which she described as "a connective tissue disorder" that affects her gait and causes her to walk in an unstable fashion. *See* Notes of Testimony (N.T.), 2/10/2025, at 29-30.

3

that her criminal DUI case had been *nolle prossed*, as that evidence was relevant to establishing that she ultimately consented to being tested. Appellant's Am. Br. at 11-18.

A license suspension must be sustained pursuant to Section 1547 of the Vehicle Code, as long as the Bureau establishes that "a licensee (1) was arrested for DUI based on reasonable grounds that [s]he was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to submit to the requested chemical test; and, (4) was warned that refusal would result in a license suspension." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008).[6] In the context of a

---

[6] Section 1547 of the Vehicle Code provides, in relevant part:

> (a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance)[.]
> (b) Civil penalties for refusal.--
>> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>>> (i) Except as set forth in subparagraph (ii), for a period of 12 months.
>>> (ii) For a period of 18 months if any of the following apply:
>>>> (A) The person's operating privileges have previously been suspended under this subsection.

**(Footnote continued on next page…)**

suspension appeal, "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." *Id.* In keeping with this, "the trial court may accept or reject the testimony of any witness in whole or in part. Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review." *Id.* Furthermore, "[r]ulings on the admissibility of evidence are within a trial court's discretion and those rulings should not be reversed on appeal absent a clear abuse of discretion." *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 22 (Pa. Cmwlth. 2010).

Appellant's first argument, regarding reasonable suspicion, is without merit. The requisite grounds exist in the event "a reasonable person in the position of a police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude the individual operated [her] vehicle while under the influence of alcohol or a controlled substance." *Marchese v. Commonwealth*, 169 A.3d 733, 740 (Pa. Cmwlth. 2017). "The issue of reasonable grounds is decided

---

(B) The person has, prior to the refusal under this paragraph, been sentenced for:
    (I) an offense under section 3802;
    (II) an offense under former section 3731;
    (III) an offense equivalent to an offense under subclause (I) or (II); or
    (IV) a combination of the offenses set forth in this clause.
(2) It shall be the duty of the police officer to inform the person that:
    (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000[.]

75 Pa.C.S. § 1547(a)-(b)(2)(i).

on a case-by-case basis, and an officer's reasonable grounds are not rendered void if it is later discovered that the officer's belief was erroneous." *Zwibel v. Dep't of Transp., Bureau of Driver Licensing*, 832 A.2d 599, 604 (Pa. Cmwlth. 2003). Rather, "[t]he officer's belief must only be objective in light of the surrounding circumstances. Moreover, the existence of reasonable alternative conclusions that may be made from the circumstances does not necessarily render the officer's belief unreasonable." *Id.*

In this instance, Trooper Pacentine saw "[Appellant's] car weaving, failing to maintain its lane, and driving in the wrong lane" just prior to the traffic stop. Common Pleas Op., 4/14/2025, at 6. After Trooper Pacentine stopped Appellant's vehicle, "[she] admitted to drinking earlier in the evening, her speech and movements were slow and lethargic, her eyes were bloodshot and watery, and . . . she failed all three standard field sobriety tests." *Id.* These facts constitute substantial evidence that supports Common Pleas' reasonable suspicion determination, as a reasonable person would undoubtedly suspect that such behavior indicated that Appellant was intoxicated at the time she was pulled over by Trooper Pacentine. *See Marchese*, 169 A.3d at 740.

Appellant has argued that Trooper Pacentine lacked reasonable suspicion to believe that she was intoxicated, because she told him that she suffered from Ehlers-Danlos Syndrome and could not walk normally as a result; did not have alcohol on her breath or slurred speech; was able to exit her vehicle without assistance; eventually submitted to blood testing at some point after Trooper Pacentine had signed the DL-26B form, which showed that her blood-alcohol content was under the legal limit; and ultimately had her DUI charge *nolle prossed.* Appellant's Am. Br. at 11-14. However, in light of the evidence credited by

Common Pleas, Trooper Pacentine's mistaken belief was nonetheless reasonable. *See Zwibel*, 832 A.2d at 604. Further, in making this argument, Appellant essentially asks us to reweigh evidence and make credibility determinations; as we have already explained, however, these responsibilities fall outside our limited scope of review. *See Reinhart*, 954 A.2d at 765 (cleaned up) ("In reviewing this matter, we are mindful that it is not the province of this Court to make new or different findings of fact. Rather, we may only review the trial court's findings to determine if they are supported by substantial, competent evidence.").

Next, we conclude that Appellant's second argument, regarding her consent to being tested at the Center, is similarly without merit. It is well settled that "[t]he question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). In keeping with this, "[w]e continue to adhere to the established law providing that anything less than an unqualified, unequivocal assent constitutes a refusal under [Section] 1547." *Dep't of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996). "Further, an explicit refusal is not required to find a licensee refused to consent to chemical testing; [rather,] a licensee's conduct may constitute a refusal." *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (cleaned up). "Thus, the question of refusal turns on a consideration of whether [a licensee's] overall conduct demonstrated an unwillingness to assent to an officer's request for chemical testing." *McGreevy v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., 1234 C.D. 2023, filed Mar. 28, 2025), slip op. at 7, 2025 WL 945641, at *3 (citations omitted).[7]

---

[7] We may cite memorandum opinions of this Court for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Here, we agree with Common Pleas that "[Appellant's] conduct, [*i.e.,*] her repeated questioning about the arrest and her rights, coupled with her failure to unequivocally agree to the testing, amounted to a refusal." Common Pleas Op., 4/14/2025, at 10. Given that Appellant had ample opportunity to expressly consent to testing while at the Center, but failed to do so, her second argument does not establish a legally valid basis for overturning Common Pleas' decision.[8]

---

[8] While Appellant maintains that she had a right to question Trooper Pacentine after he asked her at the Center to consent to testing, Trooper Pacentine "had no duty to answer [Appellant's] questions to [her] satisfaction or spend time ensuring that [she] fully comprehended the DL–26 Form." *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294, 301 (Pa. Cmwlth. 2013). As we have explained in the past, "the DL–26 Form does not generate confusion, adequately and accurately informs a licensee that a request for counsel will be treated as a refusal for purposes of a license suspension, and contains sufficient information upon which a licensee can base a decision as to whether to submit to testing." *Id.* at 300-01. Accordingly, Trooper Pacentine "fulfilled his obligation once he read that form to [Appellant]." *Id.* at 301. In other words, neither Appellant's confusion nor her concerns about Trooper Pacentine's handling of the situation relieved her of the need to provide affirmative testing consent in order to avoid the mandatory suspension penalty imposed via Section 1547. Further, though Appellant states that Trooper Pacentine ordered her to remove articles of her clothing while in his presence, Common Pleas specifically "found [her] testimony on the subject of being asked to expose herself not credible, and best explained by her misunderstanding of . . . prison regulation[s,]" and noted that she had "offered no evidence to suggest she was actually compelled to remove her top or expose herself in any fashion." Common Pleas Op., 4/14/2025, at 3; *see* N.T., 2/10/2024, at 23 (Trooper Pacentine testified that the Center's "policy" is that arrested individuals are only allowed to wear "one layer[,]" as well as that he "would have never even asked [Appellant] to take a layer off if she would have been naked"). Finally, though Appellant insists that she eventually consented to testing, the record contains no evidence regarding exactly how or when Appellant ultimately provided such consent and was tested, or precise information as to the results of this alleged test. *See id.* at 31-32 (Appellant testified in general terms that she passed a "breathalyzer" test and was consequently released from the Center); *cf. Olbrish v. Dep't of Transp., Bureau of Driver Licensing*, 619 A.2d 397, 399 n.3 (Pa. Cmwlth. 1992) (a police officer's new offer of a blood test is gratuitous when the new offer is made after an arrested licensee has already declined to be tested and may be revoked at the officer's discretion, but "[w]here there is a refusal and the police then gratuitously offer a second test *which the licensee successfully completes*, a waiver of the first refusal may occur" (emphasis in original)).

Finally, we conclude that Appellant's remaining argument, regarding Common Pleas' refusal to admit evidence about the *nolle prossing* of her related criminal DUI charge, is also without merit. "The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. The only fact necessary to the administrative determination is the driver's refusal to comply with the [chemical testing] request after being taken into custody." *Dep't of Transp. v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987). "Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege" pursuant to Section 1547. *Id.*; *accord Kachurak v. Commonwealth*, 913 A.2d 982, 986 (Pa. Cmwlth. 2006) ("It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.").

The *nolle prossing* of Appellant's DUI charge has no bearing on this matter because, contrary to Appellant's position, the mere fact that this charge was dismissed had (and has) no bearing on whether Appellant properly consented to Trooper Pacentine's testing request. Common Pleas therefore did not abuse its discretion by declining to admit evidence about the disposition of Appellant's criminal case, due to that evidence's lack of relevance. *See Habte-DeJesus*, 346 A.3d at 401 n.3; *Wysocki*, 535 A.2d at 79.

### III. CONCLUSION

In accordance with the foregoing analysis, we affirm Common Pleas' February 11, 2025 order.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith MoBilio,                                    :
                    Appellant                      :
                                                   :    No. 243 C.D. 2025
            v.                                     :
                                                   :
Commonwealth of Pennsylvania,                      :
Department of Transportation,                      :
Bureau of Driver Licensing                         :

## **O R D E R**

AND NOW, this 21st day of July, 2026, it is hereby ORDERED that the order of the Lehigh County Court of Common Pleas, dated February 11, 2025, is AFFIRMED.

 

 

**LORI A. DUMAS, Judge**